Councilor Begin, before we get going I want to make sure that before we get started I want to make sure that we're squared away with the that we've consolidated the arguments this morning that's two different cases and you're so I need to know from you how much time you're going to reserve 10 minutes for rebuttal so they're consolidated 20 minutes so there's the arguments in both cases are now consolidated and instead of 15 minutes you're gonna have 20 minutes to address your the issues my assumption when I was asked when I checked in was that I would argue the appeal one four four six in my opening time and then both have my rebuttal on one four five I'm happy to do it however you whatever why don't you address the the issues in both cases during your your direct and save time for rebuttal okay if you need additional time I'll grant it to to all the parties if we get to that point okay so you're you want to 13 13 and I'll reserve some okay thank you thank you you may begin please your honors may it please the court thank you just housekeeping do you agree claims one eight and ten are illustrative for the one four four six appeal yes we have claim nine which is the where claim which is I'll agree that's illustrative for the one four five one appeal so what claim one with the primarily transmitted issues claims eight and ten primarily with respect and another housekeeping question if we affirm on obviousness does that move your your other appeal if I think if yeah if you if there's an affirmation on petitioners appeal in the one four four six I think that does move the other appeal but that's their appeal yeah that's right yeah that's I think that's what you can answer that when you get up I assume the answer is yes okay thank you with respect to the one four four six appeal and with respect to claims eight and ten primarily in the combination of the guest SE reference and the Berghauer reference our position is that it should be reversed because the board's finding regarding the motivation to combine is simply not supported by substantial evidence on that point I'd like to hear your your comments on the issue of commercial viability and the reliance on that our position was that the motivation to combine which was laid out in mr. Parker's declaration paragraph 141 said you're going to have this desire to increase use cases for commercial viability we inquired with their expert as to what investigation he had made into commercial viability with respect to the references and yeah and he said he didn't you right and I think that's a but why is that relevant isn't a reference prior for all it discloses absolutely and we agreed with this at the we we just to make it crystal clear we are not disputing in any way that guest SE qualifies as prior and that's Berghauer qualified and for everything they disclose that's right and for everything that they disclose under the SAS case the petitioner controls their petition and they control the basis on which they're going to have a motivation to combine our position was that when they said that a person of ordinary skill in the art would be motivated to make the combination based on a desire to increase the commercial commercial viability of the first reference that that put it in play but exclusively for the issue of motivation to combine not for anything else well but only for the with respect to the issue of mr. Parker's generality with respect to it that he didn't support you say he only provided a quote generic reason that's the language we use yes your honor I think generic reason general reason I think this we had cited to the court in our briefing the active video case which indicated that and Polaris and Polaris in the court on November 22nd of this past year in the TQ Delta versus Cisco 942 f3rd 1352 again indicated that conclusory and unsupported motivations to combine were inadequate and I think that's just part and parcel with that same why is it why is it relevant that they're commercially viable or inviolable I think it's I think it's relevant that an expert if they're going to proffer a motivation to combine along the lines of make it better make it safer make it more commercially appealing our reading of the case law is they need they need to orient that to the references that issue so I think of a person of ordinary skill in the art says I look at reference a gestation a race car and I just as he says that it's important for cornering and handling that you have good tire traction and I've got reference B that says I've got tires with great traction they're the you know there I think an expert could opine and create the create create the combination of new tires with gestation race because that competition would simply because it would provide better handling so that was the and maybe my analogy didn't take super well but I think from from our side if you're going to come in and offer commercial viability as a foundation for a motivation to combine it needs to be oriented to the references if you're going to come in with the idea of increasing use cases you don't you don't challenge it just the use of commercial viability as a as an element that could be used to show a motivation to combine no and and I don't think I don't think we're not citing active video or the other cases from this court to say that that's per se rejected what we're saying is like an active video where they wanted to make it better where they wanted to sell more units in here you're obligated then to develop that argument more and present more record evidence to explain why that's all we're saying we're not saying that it's per se bad or per se off limits what we're saying is we're going to go down that road it has to be more than conclusory and unsupported the board then went and used the background of the invention and our expert mr. councilman's agreement with the background of the invention to find that he agreed with the concept of making the combination based on commercial viability and there I think the board we characterize this as a potential reversal of the burden of proof under Magnum oil I think it also could be characterized as a failure to look at the record as a whole we argued that the board sort of completely didn't look at our experts expressed this is what you always argue all of you argue this every single time when they you present your experts and the board disagrees with you you come in here and say either they didn't look at it improperly even though we presume they did or you argue that they shifted the burden to you under Magnum when all they're doing is looking at your evidence and rejecting it that's not a reversal of the burden it's just they don't agree with you I certainly agree there's room for that absolutely I think here can you point to any place in the board's decision where they say you didn't carry your burden of proof no well then they didn't shift the burden improperly it's it's this implicit or this argument that they have somehow implicitly shifted the burden under Magnum oil makes no sense when they've cited the same the right burden and all they're doing is addressing your arguments or finding them insufficient that's not a burden shifting which I choose I think that in the manner we argued it with respect to the motivation to combine I think the board was obligated to look at the fact that mr. councilman expressly disagreed with the motivation to combine based on commercial viability how do we know they did it they didn't say it under new base the board isn't obligated to provide a detailed point-by-point rebuttal of your case they're required to look at the record and make a decision and even then on review we can't fault them for that unless they clearly have not done something if they've clearly ignored some the fact that they didn't specifically address it doesn't mean they somehow shifted the burden or ignore the evidence they've reached a reason conclusion on the record and our position with respect to the motivation to combine is simply that they were obligated to at least comment and we have no at least look at the record especially where it's so dramatic he disagreed point-blank with the commercial viability reason and the board used his agreement with the background as a basis to say that he in fact agreed with the commercial viability and maybe that doesn't answer your question directly but I well it's just to me that the board did indeed look at your experts declaration and disagreed with the fact that they are not the other side in this case they are not obligated to rebut your arguments point by point they're obligated to look at the record and reach a regional decision that is the process I I would like to move with and you're gonna talk about unmet need as well I what I'd about is this idea of under personal web I can happily talk about unmet need and I'll make it quickly for the the board did go through point by point the seven reasons why mr. councilman did not you know or was unpersuasive with respect to why you'd use Berghauer's radio motors into this they went through that I think our problem there is under personal web because the petition and Mr. Parker in their opening declaration said that a person would put those exact motors to which is the radio motor and 3a on to gustasee that it was BMW's burden of proof to explain how to do that and why it would be successful so for the analysis by the board to focus on why we couldn't rebut that when BMW never put that out in the first instance demonstrates either a failure to look at the record as a whole or with respect to unmet need our view there is simply that when the board used our general and generic statement from the background of our invention as a basis to say that there's a desire to increase use cases for a universal or modular chassis that they needed to look at the filed an application on the same issue or on the solving the same problem two years later simply that just that it needed to be done consistently how is grill relevant to claim 10 of the 163 pen claim 10 is directed towards hybrid vehicle with electrical motor and an internal combustion engine in the combination with the universal frame as is grill so they're both directed to in my last five minutes I can shift to the other appeal for a few minutes so I can reserve yes I think our positions are fairly simple with respect to the claim construction of primarily transmitted which follows as such that we offered a claim construction in patent owners response BMW had an construction in the petitioners reply they did not that issues now being raised here for the first time we believe it's a waiver notwithstanding we believe our claim construction is correct that the such that clause signals up indication of the function of the chassis in the environment which it's found with respect to the wire issue it too is substantial evidence the on the issues between our evidence and their evidence with respect to the experts to me that's 50-50 and so the board looked at other evidence and we believe substantial evidence supports that other evidence tipping the scale that 1% more and for that reason we believe that that should be affirmed okay thank you so much you have 20 minutes should you need that let's do that in address first of all the 1441 appeal with respect to the motivation to combine believe you mean 1446 1446 I'm sorry just to make sure that the recording is clear yes thank you you know the evidence supported that there was a known desirability in the automotive arts to design a chassis to made available for multiple use cases that design incentive is motivation but it wasn't the only motivation there was also the interrelated teachings of the patents that mr. Parker explained in detail with respect to the guest SE and Berg our references together you had a substantial evidence of a motivation to they looked at mr. Parker's testimony on this known desire to increase the use cases they then saw that mr. Kunselman the patent owners expert agreed and they saw that the background of the 163 patent even confirmed that known desirability with that they had no question to look for any other evidence with respect to whether there was sufficient motivation to combine but there actually was as we said mr. Parker pointed out the interrelated teachings of these patents you have the guest SE and Berg our references which were both directed toward modular backbone types of structures you had in the Berg our reference and express object of trying to optimize the use of space because batteries and fuel tanks could take up a lot of space so Berg our look to put it into these backbone support pipe you had the guest SE reference which also used the backbone support pipe for its energy source for its combustion engine you had just SE with a modular chassis design that not only stored the fuel there but had two different embodiments where you could switch out the engines on the front module so mr. Parker also opined on commercial viability right with what he said was to increase the commercial viability what his statement was that you was a known desire in the automotive arts in with respect to chassis designers when you design a chassis to make it available for use across multiple use cases in order to increase the commercial viability of a chassis so yes he did make that he was asked essentially a wrong question I was asked whether the guest SE reference was commercialized or whether the Berg our reference was commercialized that became the whole linchpin for this commercial viability commercial success commercialization types of arguments that the patent owner has now been making but the board examined that so help me understand what what mr. Parker was trying to say was he trying to say that there's a motivation to combine because if you do so you'll result in greater sales down the road not exactly your honor what he's saying is that when you have a desire to make a chassis more viable by making available for more use cases you're going to increase its marketability so it is increase a market marketability is that an element for motivation to combine really the market forces is part of an is an element as his design incentive which is what we've talked about as is the interrelated teachings of the patents and all of that was set forth in several paragraphs of mr. Parker's declaration and again the known desirability to do this which is the motivation of your chassis designer was agreed to by the patent owner's expert you know our case follows essentially the the logic of the board in several cases the PGS geophysical case and the ZUP LLC versus Nash case where the board did examine the motivation they also noted that there was no dispute that all the elements were met in the combination of the references and then they went forth and laid out the arguments against the secondary considerations evidence for which the patent owner does have a burden of production and they did that quite clearly in the final written description excuse me final written decision over several paragraphs and pages I want to to next unless it's any questions on 1446 well just the one you answered already so I'd like to go to the written description yes the written description issues with respect to 1451 okay there the board aired and I'd like to start with primarily transmitted limitation because I think that one's a correct yes firm on the other one yes this is correct once their options for exhausting appeals of course are over with respect to the primarily transmitted limitation you know one of the positions that we've taken is the claim claim one of the 163 patent states that the ride handling and impact crash loads are transmitted between the front and rear structures structures through the backbone the ride and handling loads they're agreed those are chassis loads they're defined in the patent as being the chassis loads and consistently throughout the entire family those chassis loads are described as being transmitted solely or entirely through the backbone and that makes front structure rear structure the and then you have a central backbone there's no frame surrounding that central backbone therefore the loads are chassis loads are solely through the backbone the 163 patent explicitly states that because there's no frame the unit chassis or because the unit chassis doesn't have a frame the loads are solely the chassis loads are solely through the backbone but let's you know take a look at the impact crash loads because the patent owner has made an argument that the structures haven't changed the function hasn't changed but let's look at the impact crash loads and how those changed changed excuse me I'd cite you to appendix 1923 which is the redline version between the 490 application for which they claim priority in 2008 and the 2012 CIP for which we claim they're not entitled to any earlier of a date and if you look at appendix like 1923 you'll see it's in color the blue changes or what has been added in the 2012 CIP so if you could read that passage in paragraph 6 which is up at the top and it's right about in the middle of it it states that the object is to take the chassis loads and decouple them from body loads and impact crash loads so in 2008 in the 490 application the chassis loads are decoupled from body loads and impact crash loads now read the blue in in 2012 and their further disclosure where they had added a lot of disclosure about crash boxes throughout the spec it now says that those chassis loads are still decoupled from body loads but also the impact crash loads are now absorbed to the backbone absorbed through the crash boxes to the backbone so the structure did change you had impact crash loads in the 490 application and that passage is the only one where impact crash loads are discussed anywhere in the 490 application they are decoupled from the chassis loads and in 2012 they are now absorbed to the backbone that's a contradiction that can't be resolved and therefore for that reason alone the impact crash loads can't find support even primarily through the backbone from the 490 application and then further when you have the 163 filing patent you'll see that they changed the term solely to primarily and for support because they had none of this only showed up within the claim they went to look at a passage in the 163 application that is unrelated to how the loads are body from the backbone using body mounts and it simply says that if you can isolate the chassis or the body from the backbone using the body mounts you've substantially decoupled the loads and only substantially because there's a weight and weight obviously would affect still the the backbone but what they never show is in when I should say the board in their findings said that well that's evidence of sharing of loads and therefore we find written description but that first of all doesn't track the claim language which isn't just sharing of loads it is primarily transmitting them from the front structure to the rear structure through the backbone and that's what gave rise to what we anticipated they would argue which is that there's some some alternate load path from the front structure to the rear structure that goes through a body when the body is on the chassis to argue two problems with that the first problem is the 490 application and if you look at appendix site 1532 you'll see on appendix site 1532 this is the published 490 application and if you look at claim 15 this is also on page 54 of our blue brief they had a disclosure of the 490 their priority which says you have a body it is mounted to the backbone but it still says the chassis loads are solely I think it says entirely there are solely through the backbone so even when they try to rely on this passage of a body being mounted to a backbone their earlier disclosure is still consistent with what the intent was which is those the chassis loads are still throat solely through the backbone and a similar claim like that even exists in the 2012 CIP at appendix site 1761 claim 11 where again now they have a claim with the body on it which is what they've been arguing you have to read their claim one of the 163 patent is having a body but now you have a claim that they wrote with a body and it still says the chassis loads are solely through the backbone so we believe there's no substantial evidence to support the board's findings with respect to the primarily transmitted limitation secondly with respect to the alternate load path it's a claim construction issue only because impliedly they had to reach that view otherwise the loads would still be going through the backbone because nothing else connects the front structure to the rear structure and even their own drawing figures make it clear that the body is just mounted to the backbone and with that let me address the wire limitation unless there's any questions on the wire limitation this is essentially a case where the board applied an obvious to try or obvious to use analysis there is no express disclosure of a wire in the 490 application the only language that is being relied upon by the patent owner is a discussion of how you assemble their chassis where they say you suitably couple components together that's not a structure suitable coupling that is essentially a method act so there's no actual structure of anything that is a electrical conductor within the 490. If you have a power source on the front of the rear frame and on the front frame and then on the back and there's a hollow, that hollow tube between them, wouldn't that imply that there's a wire connecting the two? It would likely imply that there may be a conductor of some sort but not necessarily a wire that you know Mr. Parker, there are numerous other conductors available to couple batteries. Bus bars are used extensively in battery packs that's part of the record so are... But if the point is to put batteries inside the the the hollow tube that's connecting everything then there must be a wire there right to to connect everything. That's not necessarily as Mr. Parker says, you can connect it with other conductor structures such as bus bars. A bus bar is effectively a metal conducting rod. Correct, correct. And what we're really, to take it another level though further, you have to look and say what is their actual claim language. For example, one of their claims talks about a wire and spanning the entire length. Well if you have batteries in that you're connecting to, that wire isn't spanning the entire length. They may be referring there to a different type of wire such as a wiring harness in the vehicle that goes from one end to the other doesn't connect to the batteries at all. And in fact I think that's maybe what they were aiming at but there's no disclosure of that until they filed the 2012 CIP where at that point they put in ample disclosure of not only fluid lines, electrical lines, how they're located, the purpose, why. But as of the 490 priority date that they're claiming or want to claim, there is, it may be obvious to use one, your honor, I'll be the first one to agree with that, but that's not what the law is. There's no actual disclosure, there's no express disclosure, there's not even an actual structure as we said, it's just suitable coupling something. You're into rebuttal time. I'm sorry, with that actually I will stop. Okay, thank you. He's got ten minutes? Seven minutes. Okay, correct. Thank you, your honor. Turning to the motivation to combine on the 1446 appeal, petitioner argued that there was a lot of record evidence pointing to specific things in the patents themselves that supported that combination. I would direct the court to appendix page 1277, which is the opening declaration of petitioner's expert, Mr. Parker, who's talking about combining drive motors 2 and 3A of the hybrid vehicle, and this argument was repeated in the petition itself. Under personal web, Mr. Parker needed to explain how we're going to take drive motor 2, which is a radial engine like would be found on a World War 2 aircraft, and motor 3A, which is a electric motor, which are both cantilevered off to the sides, and explain how those would be integrated into the race car of Gustessian, why that would be successful. Mr. Parker did not do that. Mr. Consolman explained why that would not be done, could not be done, wouldn't work, and so therefore, you know, under personal web, to the extent that that's used as a motivation to combine, our With respect to commercial success, commercial viability ever commercialized, our questions to Mr. Parker were very clear in the deposition and so forth in our brief. We didn't ask him about commercial success. We didn't ask him whether those references qualified or did not qualify as prior art. We asked him if it was commercially viable. Point blank. Commercial viability doesn't necessarily mean it has to be sold. Just would anybody be interested, even in your opinion, and he did not have any investigation. So I think that this commercial issue has, I don't, it has come into the case and exited the case and back into the case and exited the case. It's come in as a basis for a motivation to combine, utterly conclusory, utterly unsupported. When we criticize it, there's a step back and say, wait a second, commercial success is not relevant, and then the board says, your expert agreed that it would be commercially viable. So from our side, someone had said, it looks like a rat, smells like a rat, or we feel like we've been whipsawed by this whole, you know, it's either relevant or not, I agree, but if you're gonna put it into play, you got to support it. It's got to be more than simply conclusory. Well, it's in play. The board relied on Mr. Parker's petition, right? And it had to be supported in more than conclusory. Turning to the primarily transmitted... I don't understand what you talking about the statement on 1275 and in paragraph 151 where it says this would increase the commercial viability of the design? Yes, so all of paragraph 1. Paragraph 151 is the basis for motivation to combine. Our position is that it is conclusory and it's unsupported. What do you mean it's conclusory? Conclusory would be a skilled artist that would have the Does he have to prove that it would have been commercially viable? Or can't he just say as an expert, I think this would increase commercial viability? I think you have to... our position is that it's got to be oriented to the references. You can't... Why? Why? I think because... He's the skilled artist and we're not. I think if it wasn't tied to the references, Activision would have gone the other way. Polaris would have gone the other way. Well, but it is tied to the references. The first two sentences talks about what these references disclose. It said one of skill and art would have been motivated to use Burghauer's motors with something in Gustafsson, and then the ultimate conclusion that this would have increased commercial viability. If that's the case, I'll accept your hypothetical. BMW argued that it's irrelevant, that commercial viability... Because there's other parts in here that they talk about other reasons for why you would combine them. Sure, and we go to page 1-277. The other reasons is because both drive motors 2A and 3A, we're now talking about specific motors that you put these specific motors in, except there's no explanation of how you would put a radial engine that's cantilevered off to the side like your ear on one side, and the electric motors like your ear on the other side, and how that would go in. So I'm not disagreeing that you couldn't use the references, the subject matter of the references themselves. All I'm saying is you have to explain why under personal web for there to be substantial evidence. With respect to the claim construction issue, primarily transmitted the board, appendix 160, agreed that both experts agreed on the issue. They didn't argue the claim construction issue. With respect to the wire, substantial evidence, and with that, unless you have any other questions. Thank you. I want to compliment everybody on the nice illustrations. I'd just like to address one point made with respect to personal web. It's not only are you having to show the combination, but you're in the way claimed. This is going to be obvious, this question, right? Yes. I mean we didn't really treat these as cross appeals, but this is his appeal. Shouldn't he get the last word on that? That's correct. I mean if they want to hear it, if my colleagues want to hear it, it's fine. I think I was just thrown off by the consolidation this way, but I apologize. So I have nothing further on. Unless there's anything you'd like to hear on the wire and primarily transmitted. Can we thank the party for the arguments? This court is now in recess.